## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | | |
|---|---|---|
| TRUDY C. ROTTINK, | * | |
| | * | |
| Plaintiff, | * | NO. *LACL127505* |
| | * | |
| v. | * | |
| | * | |
| AASHAY, L.L.C. d/b/a Ankeny Super 8 | * | ORIGINAL NOTICE |
| Motel, | * | |
| | * | |
| Defendant. | * | |
| | * | |

TO THE ABOVE-NAMED DEFENDANT:

You are notified that a petition has been filed in the office of the clerk of this court naming you as the defendant in this action. A copy of the petition (and any documents filed with it) is attached to this notice. The attorney for the plaintiff is Harley C. Erbe, whose address is 2501 Grand Avenue, Des Moines, Iowa. That attorney's telephone number is (515) 281-1460; facsimile number (515) 281-1474.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County at the county courthouse in Des Moines, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator. (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

---

CLERK OF COURT
Polk County Courthouse
Des Moines, Iowa

### IMPORTANT

YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS

**Exhibit 1**

# STATE OF IOWA JUDICIARY

*Case No.* LACL127505

*County* Polk

*Case Title* TRUDY C. ROTTINK V. AASHAY, L.L.C.

THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:
http://www.iowacourts.state.ia.us/Efile

FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16: http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(515) 286-3394** . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued* 04/12/2013 12:08:10 PM



*District Clerk of* Polk          *County*

/s/ Jen Kokke

**Exhibit 1**

E-FILED 2013 APR 23 1:15 PM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | | |
|---|---|---|
| TRUDY C. ROTTINK, | * | |
| | * | |
| Plaintiff, | * | NO. LACL127505 |
| | * | |
| v. | * | |
| | * | FIRST AMENDED |
| AASHAY, L.L.C. d/b/a Ankeny Super 8 | * | PETITION AT LAW AND |
| Motel, | * | JURY DEMAND |
| | * | |
| Defendant. | * | |

COMES NOW the plaintiff and sets forth her claims for relief and states:

### JURISDICTIONAL AND GENERAL BACKGROUND

1. Plaintiff is a resident of Elkhart, Polk County, Iowa.

2. Defendant Aashay, L.L.C. is an active Iowa corporation. Defendant does business as the Ankeny Super 8 motel. All conduct by Defendant's employees, agents, or representatives, as asserted in this Petition, occurred within the scope of such persons' employment, agency, or representation. Defendant is thus vicariously liable for all such conduct as described in this Petition.

3. The incidents that form the basis for this suit occurred in Ankeny, Polk County, Iowa.

4. Plaintiff brings this action pursuant to Plaintiff brings this action pursuant to the American With Disabilities Act, 42 U.S.C. § 12101 *et seq.*, which incorporates by reference the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Iowa Civil Rights Act, Iowa Code Chapter 216, to redress discrimination in employment and Defendant's termination of Plaintiff and refusal to hire based on Plaintiff's perceived or actual disability.

1

**Exhibit 1**

E-FILED 2013 APR 23 1:15 PM POLK - CLERK OF DISTRICT COURT

5.     This court has jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. §§12117(a) and 2000e-5(f)(3) Iowa Code § 216.16(5).

## FACTUAL ALLEGATIONS

6.     Defendant hired Plaintiff as a night shift front desk worker at the Ankeny Super 8 hotel on May 2, 2011. Plaintiff was terminated on May 4, 2011. Plaintiff unsuccessfully tried to re-apply at the Ankeny Super 8 on May 24, 2011 for housekeeping positions that she had been told were available.

7.     Plaintiff has several physical and mental conditions stemming from a 1985 automobile accident. Plaintiff was a pedestrian and was hit by a drunk driver. Plaintiff has partial brain damage, partial paralysis on the left side of her body, a limp because her right leg stopped growing and is slightly shorter than her left, balance issues, and short-term memory loss, among other physical and mental impairments, as a result of that car accident.

8.     Plaintiff has no physical restrictions. Plaintiff did not request any accommodations from Super 8. Plaintiff can function virtually as normal.

9.     Plaintiff was interviewed at Super 8 by the assistant manager. Plaintiff originally asked about a housekeeping position, but there were none available. Plaintiff told the assistant manager about the various physical and mental conditions that Plaintiff suffered from. Plaintiff also told the person who trained her about those same conditions.

10.     Plaintiff's hips hurt because of standing at the desk and mopping at the end of her second night shift on May 4, 2011. As she was leaving the hotel that morning, she told the assistant manager that her hips hurt and that she had made an appointment with her chiropractor.

2

**Exhibit 1**

Plaintiff told the assistant manager that she expected to be able to work the night shift without problem and she would call after her chiropractor appointment.

11.     On May 4, 2011, Plaintiff's chiropractor recommended that she use a hip brace while working. Plaintiff then told the assistant manager that she could work that night (May 4-5, 2011) as normal with the hip brace. The assistant manager told Plaintiff not to bother coming back that night because the person training Plaintiff did not think Plaintiff could do the job. The assistant manager gave Plaintiff no further elaboration regarding why the trainer had that opinion.

12.     Plaintiff returned to Super 8 on May 23, 2011 to get her final paycheck. At that time the assistant manager told Plaintiff that housekeeping positions were now available.

13.     Plaintiff did not get her final paycheck on May 23, 2011, so she returned to the hotel on May 24, 2011. This time she spoke with the general manager, Tony Winchester. Plaintiff asked him about housekeeping positions, which she knew from the assistant manager were now available. Mr. Winchester did not really give Plaintiff an answer to that inquiry, other than to say that there were no jobs available. During Plaintiff's May 24, 2011 meeting with Mr. Winchester he made comments about Plaintiff's physical condition.


## COMPLIANCE WITH JURISDICTIONAL PREREQUISITES

14.     Plaintiff has complied with all jurisdictional prerequisites to action under Title I of the Americans With Disabilities Act (42 U.S.C. § 12101 *et seq.*) and Iowa Code 216.16. Plaintiff's federal and state right-to-sue letters are attached. Plaintiff has timely filed this Petition within ninety days of his receipt of both right-to-sue letters.

3

**Exhibit 1**

E-FILED 2013 APR 23 1:15 PM POLK - CLERK OF DISTRICT COURT

## CLAIMS FOR RELIEF

15.    Plaintiff realleges and incorporates by reference paragraphs 1-14 of this Petition as if fully set forth herein.

16.    Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111(8) and constructively or actually disabled as defined by Iowa Code § 216.2(5) in that Defendant perceived Plaintiff to have or Plaintiff actually did have physical and/or mental disabilities, as set forth above, that caused the aforementioned perceived or actual impairments and restrictions.

17.    Had Plaintiff's impairments, as Defendant perceived them, been true, Plaintiff would have been substantially limited in one or more major life activities.   Alternatively, Plaintiff's actual disabilities substantially limited Plaintiff in one or more major life activities.

18.    Defendant erroneously believed that Plaintiff had such perceived or knew that Plaintiff had such actual impairments and discriminated against Plaintiff because of those actual or perceived impairments by terminating Plaintiff and then refusing to rehire Plaintiff.

19.    Defendants each are an "employer" and a "covered entity" under the Americans With Disabilities Act.   Defendant is subject to the Iowa Civil Rights Act under Iowa Code §§ 216.2(6) & (7) and 216.6(6)(a).

20.    Plaintiff could have performed the essential functions of and was qualified for the aforesaid positions at the time Defendant terminated her and at the time that Defendant declined to rehire Plaintiff.

21.    Plaintiff's aforesaid perceived or actual impairments and limitations were motivating factors or played a role in Defendant's decision to terminate Plaintiff and to reject Plaintiff for rehire.

4

**Exhibit 1**

E-FILED  2013 APR 23 1:15 PM POLK - CLERK OF DISTRICT COURT

22.    Defendant's aforesaid actions against Plaintiff violated 42 U.S.C. § 12112 and Iowa Code § 216.6(1)(a).

23.    Plaintiff has suffered injuries and damages as a proximate result of Defendant's aforesaid conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount sufficient to fully and fairly compensate her for her injuries, including all relief available under the Civil Rights Act of 1964 and the Iowa Civil Rights Act, together with attorney fees, expenses, the costs of this action, and interest thereon as provided by law.

### JURY DEMAND

COMES NOW the plaintiff and demands a trial by jury of all of the issues in the above cause of action.

*Harley C. Erbe*
Harley C. Erbe, PK002430
ERBE LAW FIRM
2501 Grand Avenue
Des Moines, Iowa 50312
Telephone: (515) 281-1460
Facsimile: (515) 281-1474
E-Mail: erbelawfirm@aol.com

ATTORNEY FOR PLAINTIFF

5

**Exhibit 1**

Administrative Release
(Letter of Right-To-Sue)

E-FILED  2013 APR 23 1:45 PM POLK - CLERK OF DISTRICT COURT

| To: | | From: |
|---|---|---|
| MS. TRUDY ROTTINK | ) | Iowa Civil Rights Commission |
| 400 E. MAPLE ST. | ) | Grimes State Office Building |
| ELKHART, IA 50073 | ) | 400 E. 14th Street |
| | ) | Des Moines, Iowa 50319 |

Complaint CP# 06-11-60966        EEOC# 26A-2011-00926C

This is your Administrative Release (Right-To-Sue) Letter issued pursuant to Iowa Code Section 216.16 and 161 Iowa Administrative Code Section 3.10.  It is issued pursuant to the Complainant's request.

The following conditions have been met:

1. The complaint was timely filed with the Iowa Civil Rights Commission (ICRC) as provided in Iowa Code Section 216.15(12);

2. Sixty (60) days have expired since the complaint was filed with ICRC;

3. None of the exceptions set forth in Administrative Rule 161 – 3.10(4) are applicable.

With this Administrative Release, the Complainant has the right to commence an action in state district court. That action must be commenced within ninety (90) days of the issue date 1/17/2013. *The Right-to-Sue Letter is not a finding by ICRC on the merits of the charge.  ICRC will take no further actions in this matter.*

A copy of this Administrative Release/Letter of Right-To-Sue has been sent to the Respondent(s) and counsel(s) as shown below.  The Code allows any party to obtain a complete copy of the case file after a Right-To-Sue has been issued.  Requests for copies should be directed to Marcia Coverdale at ICRC.

The Iowa Civil Rights Commission
Phone: (515) 281-4121
FAX: (515) 242-5840

cc: File
    HARLEY ERBE, Complainant's Attorney
    AASHAY, LLC DBA SUPER8 ANKENY
    AASHAY, LLC DBA SUPER8 ANKENY
    TONY WINCHESTER

ICRC/S36 (24)

**Exhibit 1**

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

E-FILED 2013 APR 15 4:15 PM POLK - CLERK OF DISTRICT COURT

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Trudy D. Rottink<br>400 E Maple St<br>Elkhart, IA 50073 | From: Milwaukee Area Office<br>310 West Wisconsin Ave<br>Suite 800<br>Milwaukee, WI 53203 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 26A-2011-00926 | Ora M. Holland,<br>State & Local Coordinator | (312) 869-8078 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_John P. Rowe,_
Director

Enclosures(s)

*(Date Mailed)*

cc: AASHAY, LLC D/B/A SUPER8 ANKENY
Attn: Human Resource Manager
206 Se Delaware Ave
Ankeny, IA 50021

Erbe Law Firm
Attn: Harley Erbe
2501 Grand Ave
Des Moines, IA 50312

# Exhibit 1



Fields of opportunities

# STATE OF IOWA

TERRY BRANSTAD, GOVERNOR
KIM REYNOLDS, LT. GOVERNOR

IOWA CIVIL RIGHTS COMMISSION
BETH TOWNSEND
EXECUTIVE DIRECTOR

12/31/2012

AASHAY, LLC DBA SUPER8 ANKENY
206 SE DELAWARE AVE.
ANKENY, IA 50021

RE: TRUDY ROTTINK
CP# 06-11-60966
EEOC# 26A-2011-00926C

AASHAY, LLC DBA SUPER8 ANKENY:

The Iowa Civil Rights Commission (ICRC) has completed its investigation of the above-captioned complaint.

The ICRC Administrative Law Judge has determined a <u>probable cause</u> finding effective as of the date on this letter. Please refer to the enclosed copy of the Administrative Law Judge's Order and Case Summary.

After a finding of <u>probable cause,</u> conciliation is the next step.   The Conciliator for ICRC will contact you.  Thank you for your cooperation.  Thank you for your cooperation.

Sincerely,

Iowa Civil Rights Commission

Enclosures: ALJ Order
            Case Summary

CC: File
    AASHAY, LLC DBA SUPER8 ANKENY
    TONY WINCHESTER

ICRC/S36 (41R)

Exhibit 1

BEFORE THE IOWA CIVIL RIGHTS COMMISSION

PROBABLE CAUSE ORDER

CP#                    #06-11-60966
EEOC#                  #26A-2011-00926C

Complainant            Trudy C Rottink

Respondents            Aashay, LLC d/b/a Super 8 Ankeny
                       Tony Winchester

## STATEMENT OF THE CASE

On June 1, 2011, Complainant Trudy Rottink (hereinafter Complainant) filed a complaint with the Iowa Civil Rights Commission (ICRC) alleging discrimination in employment based on disability. She named her former employer, Aashay, LLC d/b/a Super 8 Ankeny and Tony Winchester as Respondents. Complainant described her physical and mental conditions as partial paralysis, a limp, balance issues, partial brain damage, and short-term memory loss. These conditions resulted from a 1985 automobile accident. She has no physical restrictions and did not request any accommodation from Respondent. She informed the Respondent's staff of her conditions at the outset. She began working for the Respondent on May 2, 2011, as a night shift front desk worker. She worked two nights before her employment ended on May 4, 2011. She indicated interest in working for Respondent as a housekeeper on May 2 and on May 24, 2011.

ICRC staff reviewed the complaint and determined that it fell within ICRC's investigative jurisdiction. The complaint was assigned to an investigator for investigation in accordance with Iowa Code §216.5 and 216.15 (2011). The ICRC investigator interviewed the Complainant and Tony Winchester on October 1, 2012 and completed her investigation on November 20, 2012.

This investigation included interviews of the Complainant, via telephone, and Respondent Tony Winchester, in person. The investigator reviewed documents Complainant provided, including medical records from various providers. The investigator requested documents from the Respondents, but did not receive any documents from them, despite repeated requests.

At the conclusion of the investigation, the investigator prepared a written report detailing her investigative findings and analysis. Pursuant to Iowa Code §216.15(3) and 161 Iowa Administrative Code (IAC) 3.13(1), this complaint and investigative findings now come before this Administrative Law Judge for consideration. The investigative findings below are derived from the investigator's report. Based on the evidence presented by the investigation, the Administrative Law Judge finds that **Probable Cause** exists to support the allegations of discrimination in employment because of disability. This decision constitutes the final investigatory report of the agency.

## INVESTIGATIVE FINDINGS

Complainant described her physical and mental conditions as partial paralysis, a limp, balance issues, partial brain damage, some speech issues, and short-term memory loss. She did not request an accommodation from the Respondents. She did not have any physical work

**Exhibit 1**

CP #06-11-60966

Page 2

restrictions. She informed the Respondent staff of her physical and mental conditions when she was hired and during her first work shift.

Complainant came to the Respondent's motel in person on May 2, 2011, to ask about housekeeping positions. The manager on duty at that time, Litze, told the Complainant that no housekeeping positions were available. Complainant was hired as a front desk clerk and told to report that evening for training. She began working for Respondent that night, May 2, 2011. She worked two night shifts, with a co-worker named Jim as her trainer. Her employment was terminated on May 4, 2011.

Tony Winchester, the motel manager, described his process for front desk clerks. He stated that they usually go through training by working on the two busiest evenings before they are hired permanently. He did not know whether or not this process was followed for Complainant's training.

Complainant was first told that her front desk clerk job duties would consist of checking people in and out of the motel. Later, she was told that the job duties included cleaning and sweeping the floors in the eating area. On the first night, May 2, Jim, her trainer, did not let her check people in and out. He did not let her touch any money. On the second night, May 3, Jim made her do all the cleaning functions, including mopping. Specifically, he made her do more mopping than he did the previous night. He told her that she should move faster. Complainant threw her hips out as a result of the mopping. On May 4, after her night shift ended, she told Litze about her hip pain. She sought chiropractic treatment that day, May 4. Complainant called Litze to report that she would come to work that evening. Litze told her not to come back, because Jim did not think she could do the job. Litze ignored Complainant's question of whether she was fired because of her hip problems.

Complainant kept in contact with Litze regarding her paycheck for the two shifts she worked. On May 23, she went in person to the motel to get her paycheck. On that date, Litze told her that she was accused of stealing money on May 3, the night that Complainant did all the cleaning and mopping, and that she was fired for that reason. On that same date, Litze told Complainant that housekeeping positions were available. The Complainant did not receive her paycheck on that date.

On May 24, the Complainant returned to the motel for her paycheck. This time, she spoke to Tony Winchester, the general hotel manager. She received her paycheck from him. She asked Winchester about housekeeping positions. He told her that no housekeeping jobs were available. According to the Complainant, Winchester said, "I noticed you have a limp," and "You can barely walk. What makes you think you could clean?"

According to Winchester, he noticed that Complainant stumbled as she turned to leave, and he jumped up and said, "Are you okay?" Winchester said that he did not do that because she was "some handicapped broad." He also mentioned her "hobbling on up" and stated that he was just being nice. Winchester did not know anything about the stealing accusation.

**Exhibit 1**

CP #06-11-60966
Page 3

In response to the questions regarding whether or not any housekeeping positions were available in May of 2011, Winchester claimed that the Respondent's payroll records would show that they had the same two housekeepers, a married couple, and that they did not hire any other housekeepers. Respondent failed to provide these payroll records to the ICRC investigators, despite repeated requests.

## LEGAL CONCLUSIONS

### Probable Cause Standard

Any person who claims to be aggrieved by a discriminatory or unfair practice may file a written complaint with the Commission.[1] After receiving a written complaint, an authorized member of the Commission staff is required to initiate an investigation of the complaint and issue a recommendation to an administrative law judge employed by the Commission or Division of Administrative Hearings ("DIA").[2] The Administrative Law Judge issues a determination finding probable cause or no probable cause.[3] A finding of probable cause or no probable cause is exempt from Iowa Code section 17A.17.[4]

The Iowa Civil Rights Act ("ICRA")[5] does not provide a standard for making a probable cause or no probable cause determination. The Iowa Supreme Court observed that "the legislature did not intend to require the [ICRC] to process every complaint which merely generated a minimal prima facie case."[6] The Court found the Iowa Legislature intended to permit the Commission "to be selective in the cases singled out to process through the agency, so as to better impact unfair or discriminatory practices with highly visible and meritorious cases."[7]

As a general rule, a finding of no probable cause means that following an investigation, the evidence supporting the allegations is insufficient.[8] The standard of proof is less than a preponderance of the evidence.[9] A finding of probable cause means that the investigation produced sufficient evidence to reasonably believe that the asserted claim is valid.[10] In other words, a finding of probable cause means that a prima facie case of discrimination, combined with sufficient evidence to show that the employer's asserted justification is false, permits a conclusion that illegal discrimination occurred.[11]

### Wrongful Termination

---

[1] Iowa Code § 216.15(1) (2011).

[2] Iowa Code § 216.15(3).

[3] Iowa Code § 216.15(3)(a).

[4] Iowa Code § 216.15(3)(b).

[5] Iowa Code Ch. 216

[6] *Estabrook v. Iowa Civil Rights Comm'n*, 283 N.W.2d 306, 301 (Iowa 1979).

[7] *Estabrook v. Iowa Civil Rights Comm'n*, 283 N.W.2d 306, 311 (Iowa 1979).

[8] *Kern v. Iowa Civil Rights Comm'n*, 09-1661, 2010 WL 4103949, at *3 (Iowa Ct. App. Oct. 20, 2010).

[9] *Clark v. Astrue*, 602 F.3d 140, 147 (2nd Cir. 2010) (noting EEOC standard of "reasonable cause to believe" is commonly referred to as probable cause, which is "[a] reasonable belief in the existence of facts on which a claim is based and the validity of the claim itself").

[10] *Clark v. Astrue*, 602 F.3d 140, 147 (2nd Cir. 2010); Children v. Burton, 331 N.W.2d 673, 679 (Iowa 1983).

[11] *Mittl v. New York State Div. of Human Rights*, 100 N.Y. 326, at 331, 794 N.E.2d 660 (N.Y. 2003), citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed. 2d 105 (2000).

**Exhibit 1**

Complainant claimed that her employment was terminated because of her real or perceived disability. She can prove unlawful discrimination in employment through direct evidence or through a burden-shifting analysis.[12]

Direct evidence generally demonstrates the discriminatory intent without requiring an inference.[13] Direct evidence of discrimination can include a Respondent's statement or admission that it was motivated by discriminatory intent or that it acted in accordance with a policy that is discriminatory on its face.[14] Direct evidence does not include "stray remarks in the workplace," or "statements by nondecisonmakers," or "statements made by decisionmakers unrelated to the decisional process itself."[15] To prove discrimination by direct evidence, the Complainant must show that the adverse action "occurred under circumstances giving rise to an inference of discrimination," and Complainant's status as a protected class member played a part or was a motivating factor in the decision.[16] If the Complainant provides direct evidence, the Respondent can overcome this by showing that it would have taken the same action even if the protected basis was not considered.[17]

A comment can be considered a "stray remark" or direct evidence of discrimination, depending on several factors: (1) the relatedness of the comment and the decision to take the adverse employment action; (2) the connection between the comment and Complainant's basis; (3) the specificity of the comment in relation to the adverse action; (4) the connection between the comment and the Complainant's situation; and (5) the amount of time between the statement and the adverse action.[18] Such remarks might not be sufficient to prove discrimination without additional evidence. These "stray remarks" can be considered along with other evidence as part of the burden shifting analysis.[19]

If the Complainant cannot present sufficient direct evidence of discrimination, she can establish a prima facie case of discrimination by producing evidence to show: (1) membership in a protected class, (2) that he/she was qualified for the job, (3) an adverse job action (e.g. termination), and (4) that the adverse job action occurred under circumstances giving rise to an inference of discrimination.[20] If a prima facie showing is established, then the burden shifts to the Respondent to articulate a legitimate, non-discriminatory reason for the employment action which is not a pretext for discrimination.[21] If the Respondent produces this evidence, the burden shifts back to the Complaint to show that the Respondent's reason is mere pretext.[22]

[12] *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)

[13] *McCollough v. University of Arkansas for Medical Services*, 559 F.3d 855, 860 (8th Cir. 2009)

[14] *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)

[15] *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989)

[16] *DeBoom v. Raining Rose, Inc.* 772 N.W.2d 1, 13 (Iowa 2009); *Newberry v. Burlington Basket Co.*, 622 F.3d 979, 981-982 (8th Cir. 2010)

[17] *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-245 (1989)

[18] *Schallehn v. Central Trust and Savings Bank*, 877 F.Supp. 1315, 1327 (N.D. Iowa 1995)

[19] *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Ramirez v. Gencorp, Inc.*, 196 Fed. Appx. 438, 441 (8th Cir. 2006)

[20] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Hamer v. Iowa Civil Rights Commission*, 472 NW2d 259, 264 (Iowa 1991).

[21] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[22] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

**Exhibit 1**

## Disability Discrimination

The Complainant claimed that the Respondent terminated her employment because of her disability. Federal and state laws prohibit employment discrimination on the basis of disability.[23] A Complainant can prove a disability discrimination claim by showing (1) that he or she is disabled within the meaning of the statutes, (2) that he or she is qualified, with or without an accommodation, to perform the essential functions of the job, and (3) that his or her employer discharged or terminated the Complainant because of his or her disability.[24]

A person who is "regarded as" having a disability or impairment is included within the ambit of the ADA.[25] In this type of case, the Complainant must show that either (1) her employer mistakenly believed that the Complainant had a physical impairment that substantially limited one or more major life activities, or (2) mistakenly believed that an actual, though nonlimiting, impairment substantially limited one or more of her major life activities.[26] Work is considered to be a major life activity.[27]

A person who claims to be a "qualified individual" within the meaning of the ADA must (1) possess the requisite skill, education, experience, and training for a position; and (2) be able to do the job, perform the essential job functions, with or without a reasonable accommodation.[28]

If a person successfully shows that she has a disability or is regarded as having a disability, and that she is a qualified individual, both as defined above, the Complainant must show that she was discharged or terminated, in whole or in part, because of her disability.[29] The Complainant can also show that the Respondent's proffered reason or reasons for the termination are mere pretext.[30]

In a situation like this, where the Respondent employer perceived or regarded her as a person with disabilities, the Complainant can meet his or her burden by producing evidence which establishes that the Respondent based its employment decisions on "myths, fears or stereotypes" and not on an "individualized assessment of [the Complainant's] conditions."[31]

It appears that the Respondent's staff, including Litze, Jim, and Winchester, believed that the Complainant's physical condition made her a person with a disability and prevented her from doing the job of a front desk clerk. Winchester's comments make it clear that he believed that the Complainant's physical condition prevented her from working in a housekeeping position. In other words, the investigation shows that the Respondent staff perceived or regarded

---

[23] 42 U.S.C. §12101 et seq.; Iowa Code §216.6(1)(a)

[24] Knudson v. Ag Processing, Inc., 273 F.Supp.2d 961 (N.D. Iowa 2003), citing Fenney v. Dakota, Minnesota & E.R. Co., 327 F.3d 707, 711 (8th Cir. 2003).

[25] Knudson v. Ag Processing, Inc., 273 F.Supp.2d 961 at 984 (N.D. Iowa 2003)

[26] Knudson v. Ag Processing, Inc., 273 F.Supp.2d 961 (N.D. Iowa 2003), citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)

[27] Knudson v. Ag Processing, Inc., 273 F.Supp.2d 961 (N.D. Iowa 2003)

[28] 42 U.S.C. §12111(8); Knudson v. Ag Processing, Inc., 273 F.Supp.2d 961, 990 (N.D. Iowa 2003)

[29] Weber v. Strippit, Inc., 186 F.3d 907, 912 (8th Cir. 1999)

[30] Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed. 2d 105 (2000)

[31] Vincent v. Four M Paper Corp., 589 N.W.2d 55, 63 (Iowa 1999)

**Exhibit 1**

CP #06-11-60966
Page 6

Complainant as a person with a disability. Complainant informed Respondent's staff of her physical and mental conditions at the beginning of her employment. She also told them that these conditions did not restrict her from performing the essential job functions of a front desk clerk and a housekeeper at the motel. She did not request any type of accommodation to do the job.

The Respondent did not meet its burden to articulate a legitimate, non-discriminatory reason for the employment action which is not a pretext for discrimination. The only reasons given for Complainant's termination was a statement from a former manager that her trainer thought that she couldn't do the job, without any specific justification for that belief, and then a false, vague accusation of stealing money. The Respondent's statements were generally inconsistent. The Respondent failed to produce documents to rebut the presumption of discrimination.

Winchester's comments do not seem to be stray remarks.[32] His comments, made directly to the Complainant, and then as stated during his in-person interview with the investigator, show a connection between his perception of Complainant's disabilities and his perception that she could not perform the housekeeping job duties.[33] His comments appear to be based on myths and stereotypes, and not on any individualized assessment of the Complainant's conditions and her ability to perform the job duties at the Respondent's motel.[34]

## Conclusion

The investigation in this case shows that the Complainant presented sufficient evidence to establish a prima facie case of discrimination for her claim of discrimination in her employment with Respondent.[35] I find **probable cause** that the Respondent discriminated against the Complainant and terminated her employment because of her real or perceived disability.

### ORDER

The Complainant established a prima facie claim of discrimination. Pursuant to Iowa Code §216.15(3)(c), and for the reasons stated above, I find **probable cause** to support the allegations of discrimination based on disability. It is therefore ordered that this complaint be processed in accord with the Iowa Civil Rights Act.



Emily Gould Chafa, Administrative Law Judge
Iowa Civil Rights Commission

Cc:     Complainant
        Respondents

---

[32] *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989)
[33] *Schallehn v. Central Trust and Savings Bank*, 877 F.Supp. 1315, 1327 (N.D. Iowa 1995)
[34] *Vincent v. Four M Paper Corp.*, 589 N.W.2d 55, 63 (Iowa 1999)
[35] Iowa Code §216.6(1)(a)

**Exhibit 1**

# INVESTIGATIVE ANALYSIS

CP # 06-11-60966
EEOC# 26A-2011-00926C

**Area**: Employment          **Bases**: Disability

**Complainant**: Trudy C. Rottink

**Respondents**: Aashay, LLC d/b/a Super 8 Ankeny, Tony Winchester

**Recommendation**:

After conducting a thorough investigation and based on all the information collected, I recommend the administrative law judge determine **probable cause** to believe Respondent committed a discriminatory practice, in violation of Iowa Code §216.6.

**Complainant's Allegations**:

*General Complaint Information*

Complainant[1] is alleging discrimination in the area of employment based on her disability. The adverse actions Complainant alleges are termination and failure to consider for a position.[2]

*Employment Information*

Complainant was hired by Respondent[3] on May 2, 2011 as a night shift front desk worker. Her duties included front desk administrative work, cleaning, and setting up for breakfast.

Complainant was interviewed for the position by Assistant Manager Kim Litze. When Complainant was hired, she informed Respondent of her physical and mental conditions of partial brain damage, partial paralysis, a limp, balance issues, and short-term memory loss. Complainant sustained these conditions due to a 1985 automobile accident. Complainant has no physical restrictions and she did not request any accommodation from Respondent. Complainant can function "virtually as normal."[4] Litze asked Complainant if she could sit or stand for long periods. Complainant explained she could do so, as long as she had the opportunity to alternate between sitting and standing. Complainant was only informed of tasks that would be performed at the desk during her interview.

---

[1] Hereinafter "Complainant" will refer to Trudy Rottink.
[2] "Denied accommodation" and "Harassment" were checked on page 2 of the Complaint filed with the ICRC. Complainant provided no information regarding allegations of discrimination based on denied accommodation or harassment. Therefore denied accommodation and harassment are not considered as actions of discrimination based on disability in this report.
[3] Hereinafter "Respondent" will refer to Aashay, LLC d/b/a Super 8 Ankeny. Tony Winchester will be identified by his surname.
[4] From Complainant's ICRC complaint narrative.

1

**Exhibit 1**

Litze informed Jim (last name unknown), who was training Complainant, about her [Complainant's] conditions. Complainant worked for two nights. Complainant was not informed of issues with her work performance.

*Termination*

On May 4, 2011, at the end of Complainant's shift, she told Litze that her hips hurt. Complainant was going to the chiropractor and would call Litze after the appointment. Complainant's chiropractor advised her to wear a hip brace while working. Complainant informed Litze via phone call that she would be at work that evening. Litze told Complainant not to come back, because Jim did not think Complainant could do the job. Litze ignored Complainant's question of whether she was being fired due to her hip problems.

*Failure to Consider for a Position*

Complainant went back to the motel on May 23, 2011 to get her paycheck. While there, Complainant talked to Litze, who told Complainant she had actually been fired because they caught her on videotape stealing money. Litze was not consistent when stating the amount of money which was allegedly stolen. Litze also told Complainant housekeeping positions were now available. Complainant did not receive her paycheck on May 23, 2011.

Complainant returned to the motel on May 24, 2011 for her check, and spoke to Respondent General Manager Tony Winchester. When Complainant first arrived, Winchester remarked "I noticed you have a limp."[5] Winchester denied knowledge of the allegations regarding stolen money or videotape records. When she inquired about the housekeeping positions, Winchester did not really give her an answer, other than saying that there were no jobs available. When Complainant was leaving, she asked again about the housekeeping positions, Winchester responded "you can barely walk,"[6] and stated once again that there were no housekeeping positions available.

Complainant was terminated from her job, and not offered a job in housekeeping, because of her physical conditions. She believes the actions were based on disability because of termination without notice of poor performance issues, false allegations of theft, the short time interval between notice to trainer about physical conditions and firing, and comments made by Winchester.

Complainant submits medical records of her physical condition as supporting documentation from Chiropractor Michael LaBounty, Ankeny Physical & Sports Therapy, Mercy Hospital Medical Center, and Iowa Ortho. The records document medical treatment received by Complainant from May 28, 2008 through June 22, 2011.

Complainant's Interview:

Complainant was interviewed on October 1, 2012, and she reiterated much of the information previously submitted to the Commission.

---

[5] From Complainant's ICRC complaint narrative.
[6] From Complainant's ICRC complaint narrative.

2

**Exhibit 1**

*Disability*

Due to a car accident, Complainant has partial paralysis on her left side, some speech issues, and short-term memory problems. Sometimes Complainant's paralysis makes it difficult for her to perform household chores. She also experiences difficulty with communication. Her short-term memory loss leads to her forgetting certain household tasks, such as when she has something on the stove. Complainant's disabilities do not directly impact her ability to work.

*Termination*

On May 2, 2011, Complainant came into the hotel to inquire if there were available housekeeping positions. She had been checking at various hotels for available positions. She spoke with Litze, who said there were no housekeeping positions available, but there was an open front desk position. Complainant informed Litze about her disabilities at this time. Litze gave Complainant a piece of paper which had information regarding coming to work that same night for training. Complainant never filled out a formal job application

Complainant was initially told that her job duties would be to check people in and out of the hotel. She was later told she also needed to clean and sweep the floors in the eating area. Complainant's immediate supervisor was Jim. Complainant also informed Jim of her disabilities. During Complainant's first night at work, Jim wouldn't let her perform any of the aspects of the job as far as it pertained to checking people in and out, including touching the money.

On the next night, May 3, 2011, Jim had Complainant perform tasks that were more physical. He made her do everything involving the cleaning. He made Complainant do more mopping than he had done the night before. While Complainant was cleaning, Jim kept looking over and saying "You know you need to move faster than that." Complainant questioned this, replying "Why? It is 3:00 AM and we don't start serving breakfast until 5:00 AM." Why do I have to hurry?" As a result of the mopping, Complainant threw her hips out.

The next day, May 4, 2011, Complainant went to her chiropractor and obtained a back brace. Complainant called Litze and informed her she would be able to work. Litze told her not to come back. When Complainant inquired why she shouldn't come back, Litze responded "Jim don't think you can handle the job." Complainant told Litze "Whatever." At that time, it did not occur to Complainant to think she was being terminated because of her disability. Complainant never asked for an accommodation.

Complainant kept in contact with Litze in order to find out when she would receive her paycheck. Litze kept promising it would come but it didn't. Complainant claims this was harassment, but did not have anything to do with her disability.

On May 23, 2011, Complainant went to speak with Litze. Litze then told Complainant she had been accused of stealing money. Approximately $100 had allegedly been stolen on May 3rd. Litze told Complainant that Jim had put the money back in out of his pocket. Complainant found that hard to believe, because if she had been caught stealing it would have come out of her paycheck. Complainant's response was "Whatever." Litze did not give any indication that anything would happen to Complainant as a result of the allegation, or that Complainant would need to repay the money.

3

**Exhibit 1**

*Failure to Consider for a Position*

During the same conversation, Litze told Complainant that she [Litze] was quitting, so her position would soon be available. Litze also told Complainant that a family lived there that did the cleaning. The family couldn't keep up with the workload, so Respondent wanted to hire extra help. Litze informed her that the General Manager, Tony Winchester, would be there the next day so Complainant could inquire with him about the housekeeping position. Complainant said she would do so. Complainant is not aware of the qualifications for a housekeeping position. Complainant thought it would be a good position because she would not have to rush, and would only be working three days a week, similar to the night-time front desk job. Even though Complainant had just been accused of stealing by Litze, Complainant still felt comfortable applying for another position with the Hotel. Complainant knew she was innocent and she needed a job. Complainant did think it was strange that Litze would offer her a position after she accused her [Complainant] of stealing.

Complainant returned to the Hotel a couple of days later and went to Winchester, the "main boss," to get her paycheck. Complainant first talked to Winchester about working the front desk position, and he informed her it had already been taken. Complainant also discussed the allegation that she had stolen money. Winchester said he had no idea what she was talking and asked her to "please drop it." Complainant then asked him about housekeeping and he was "sitting all quiet." Complainant then stood up, and Winchester said something to the effect of "You can just barely walk. What makes you think you could clean?" Complainant replied "I think I'm doing a pretty good job after everything I've been through." Complainant then left and contacted her attorney.

## Respondents' Reasons:

Winchester filed a personal response to Complainant's allegations. No other response was received.

Fifteen employees work at Super 8 Ankeny.

Respondent has employed the same housekeepers for two years. As such, Complainant did not apply for a housekeeping position nor was offered a housekeeping position because Respondent did not have any open positions for housekeepers.

Winchester does not remember whether Complainant had a visible health condition or impairment. Complainant did not complain about different treatment because of a disability.

Winchester states the Complainant was not eligible to be rehired. No reason is given.

## Respondent Interviews:

*Tony Winchester*

Tony Winchester was interviewed October 1, 2012. Also present during the interview was Respondent co-owner Gita Patel. Winchester claims Patel doesn't know anything about what occurred regarding Complainant, but he wanted her present for the interview as she is his superior.

**Exhibit 1**

Respondent is a Super 8 hotel franchise. There is another hotel owned by a different corporation which he also manages. Winchester was hired four and a half years ago by Patel. Winchester is currently the Hotel Manager. He does "whatever it takes to make the hotel work properly. Literally." Winchester answers to Patel, and everyone else answers to him.

Winchester believes Complainant was hired by Erica, who was the hotel manager. He then states "Whoever hired her was the manager." Winchester acknowledges that Kim Litze could have been the person to hire Complainant. Winchester believes Complainant worked for a total of two days as a front desk clerk. People hired for that position generally go through a training period in which they are supervised while performing their job duties. Winchester's process is to have employees work on the two busiest evenings before they are hired permanently, though he does not know if this process was utilized with Complainant. Winchester has no knowledge of how her training period went.

*Termination*

When asked if Complainant was terminated, Winchester responded "I don't know anything about it." Patel also claimed she didn't know anything about Complainant's termination.

*Failure to Consider for a Position*

The manager at the hotel quit without providing any advance notice. Winchester and Patel claim that this employee was "probably" Kim. Kim worked there for approximately one year, though she had only held the manager position for a few months. Winchester was working at the other hotel when he asked to come and help out.

On the date when Complainant came to pick up her paycheck, Winchester arrived at the Hotel at approximately 3:30 PM. He had brought the employee paychecks with him. A bunch of people kept coming up to him to receive their checks. Complainant came up to him and he gave her a check. Complainant asked if they were hiring housekeepers. Winchester told her that he really didn't know anything about it. He inquired with Complainant if she was currently working at the Hotel as a front desk clerk. Complainant said "No, I can't do that, I quit." Winchester believes Complainant stated she had quit two weeks previously. Complainant never mentioned anything about being terminated for stealing money.

Winchester states, "I told her, and you can check our payroll records,[7] and you can prove what I'm about to say, okay, we had two housekeepers, the housekeepers had been here for about a year, they were the only two housekeepers we ever had, it was a married couple, they lived in a room up here, okay...and uh, you know, we weren't hiring anyone, okay...okay, nor did anyone get hired."

As she turned to leave, Complainant stumbled and Winchester jumped up and said "Are you okay?" Winchester did not ask if she was okay because she was "some handicapped broad," but was merely being courteous. She then started on "a long story" about a car wreck that resulted in being injured. Winchester said he was busy, apologized, and said she could call him in a couple of weeks. He never heard from her again. He was just trying to be nice. Winchester was not if Complainant had a

---

[7] Winchester is "pretty sure" Respondent already provided payroll records and schedules to the ICRC, specifically to the "black guy who used to call and bug me all the time..." He further states, "There was a black guy who used to call me and I sent him a bunch of stuff...I knew he was black from the phone, okay?" ICRC records do not indicate that any such information was ever provided by Respondent.

5

**Exhibit 1**

disability. He states "I didn't know her, I don't have nothing against her, I did nothing bad to her, I didn't say nothing bad to her." He just knew she was "some girl" standing there. He never saw her walk, except when she turned around to go. Winchester did not see Complainant "hobbling on up and said 'Hey, what the hell?'" Complainant did not say anything else before she left. If Complainant had a problem with Litze, Winchester doesn't know anything about it. He has never seen Kim again. The co-owner of the hotel, Vinay Patel, was present when this interaction occurred.

Winchester states, "I don't think that little girl thinks I did anything bad to her either, okay? I think this maybe happened…has something to do with prior to me walking in the door." Patel states she has never heard Winchester say anything bad to any employees.

*Vinay Patel*

Patel does not recall when Complainant came to pick up her paycheck.

Respondent's Relevant Documents:

On December 19, 2011, Respondent was asked to respond to an Initial Information Request for specific documents relevant to the investigation. Respondent failed to respond.

On October 4, 2012, a subsequent information request was sent directly to Tony Winchester requesting the following information:

1. Identify all employees who worked on the night shift from June 31, 2010 to July 1, 2011; please provide documentation which includes but is not limited to the employee's name, last known address, and last known phone number;

2. Complainant entire personnel file or any other file kept regarding Complainant employment, including pay records;

3. All documentation related to hire generated for all employees hired for a housekeeping position from June 31, 2010 to July 1, 2011;

4. All documentation related to hire generated for all employees hired for a front desk position from June 31, 2010 to July 1, 2011;

5. Surveillance recordings reviewed by Kim Litze when making the decision to terminate Complainant for stealing money on or about May 3, 2011.

To date, despite numerous inquiries, Respondent has failed to provide the requested documentation. As such, a negative inference will be drawn from Respondent's failure to cooperate with this part of the investigation.

**Exhibit 1**

Analysis:

*Disability*

The Iowa Civil Rights Act (ICRA) prohibits an employer from discriminating against a qualified individual due to his or her disability.[8] The federal Americans with Disabilities Act (ADA) and its regulations guide our interpretation of the ICRA's provisions on disability discrimination.[9]

Under the ADA, as amended by the ADA Amendments Act of 2008 (ADAAA), the determination of whether someone has a disability requires an individualized assessment. The ADA defines "disability" as:

(1) A physical or mental impairment that substantially limits one or more major life activities; or
(2) A record of physical or mental impairment that substantially limited a major life activity; or
(3) When a covered entity takes an action prohibited by the ADA because of an actual or perceived impairment that is not both transitory and minor. A person defined as having a disability under this prong would not be entitled to a reasonable accommodation from an employer.

Under the first prong, the final regulations provide a non-exhaustive list of examples of major life activities, including walking, standing, bending, speaking, thinking and working. Also included under the ADAAA are major bodily functions, which include neurological and musculoskeletal functions. The term "substantially limits" should be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. The determination whether impairment is "substantially limiting" should be made by comparing the ability of an individual to the general population.[10] This comparison should generally not require a scientific, medical or statistical analysis.[11]

"The term "is regarded as having an impairment" means: . . Has none of the impairments defined to be 'physical or mental impairments,' but is perceived as having such an impairment." Iowa Admin. Code r. 161-8.26(5)(c). To determine whether the employer perceives a disability, the Complainant "must establish that the defendant failed to make the employment decision based on an individualized assessment of the plaintiff's condition, and instead based its decision on myths, fears or stereotypes." *Vincent v. Four M Paper Corp.* 589 N.W.2d 55,63 (Iowa 1999).

Complainant has named several medical conditions which resulted from a childhood car accident, such as partial brain damage, partial paralysis, a limp, balance issues, and short-term memory loss, of which she informed Respondent. However, Complainant alleges she has no physical restrictions and can operate "virtually as normal." Complainant does not allege her impairments limit one or more major life activities. However, she alleges Respondents regarded her as having such impairment, since Respondent terminated Complainant after she complained of hip pain and her trainer learned of Complainant's medical conditions.

Complainant has established that she is regarded as having a disability.

---

[8] Iowa Code § 216.6(1)(a).
[9] *Bearshield v. John Morrell & Co.,* 570 N.W.2d 915, 918 (Iowa 1997).
[10] 29 CFR § 1630.2(j).
[11] U.S. Equal Employment Opportunity Commission, Questions and Answers on the Final Rule Implementing the ADA Amendments Act of 2008, http://www.eeoc.gov/laws/regulations/ada_qa_final_rule.cfm.

7

**Exhibit 1**

*Termination*

Complainant alleges that she was terminated because she was regarded as having a disability.

In a case such as this, Respondent's motive or intent is essential and can be proven by either direct or circumstantial evidence. In this case, the collected information does not indicate there is any direct evidence of discrimination; therefore the *McDonnell Douglas* burden shifting scheme must be used to analyze the claim. Originally established in *McDonnell Douglas Corp. v. Green*, 411 U.S. (1973),[12] the framework requires a plaintiff to present a prima facie case of discrimination. The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse job action. This requirement was later refined by the Supreme Court in *Texas Department of Community Affairs v. Burdine*,[13] which requires defendants to produce admissible evidence to support their reasons. Finally, under the *McDonnell Douglas* framework, plaintiff must prove that the reason given is a pretext and the true reason for the job action is discrimination.

In the case of an existing employee/employer relationship, the Iowa Supreme Court has modified the McDonnell Douglas test to fit an existing employer/employee relationship.[14] A prima facie case of discrimination may be shown if Complainant establishes:

        (1) She belongs to a protected group,
        (2) She was qualified for the job,
        (3) She was terminated, and
        (4) There are circumstances supporting an inference that the adverse employment action was based on impermissible consideration.

As stated above, Complainant belongs to a protected group based on her perceived disability. Complainant states she was able to perform the functions of the job, without accommodation, and she did so successfully for two shifts before she was terminated.

Complainant alleges she was terminated from the job because of she was regarded as having a disability. Complainant did not receive a consistent explanation regarding her termination. She was told to not come back to work after she went to see a chiropractor for hip pain. Complainant was told by Assistant Manager Litze that she was terminated because of allegations of theft. According to Complainant, Tony Winchester did not seem to know anything about those allegations. Instead, Complainant alleges Winchester made two comments to Complainant about her physical condition, specifically about Complainant's limping and limited ability to walk. Complainant has established a prima facie case.

The burden now shifts to Respondent to demonstrate a legitimate, non-discriminatory reason for Complainant's termination. There is some disagreement as to whether Complainant was terminated. During Winchester's interview, he alleged Complainant told him she had quit after two days because she couldn't do the job. With Respondent failing to provide requested information or evidence that may have reinforced its position, it will be assumed that Complainant was terminated on May 4, 2011. As such, Respondent has provided no reason for Complainant's termination. Both Winchester and the owners claimed they knew nothing about Complainant's hire or termination, and could not even assume who the hotel manager would have been at the time. Winchester and the Respondent owners further

---

[12] *McDonnell Douglas Corp. v. Green*, 411 U.S. 795 (1973).
[13] *Tex. Dept of. Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).
[14] *Hamer v. Iowa Civil Rights Comm'n*, 472 NW2d 259, 264 (1991).

8

**Exhibit 1**

claim no knowledge of any theft that occurred. Respondent provided no evidence to rebut the presumption of discrimination.

Based on the provided information, Complainant can establish she was terminated because of discrimination based on her disability.

*Failure to Consider for a Position*

Complainant alleges Respondent failed to consider her for a housekeeper position based on her disability. To establish a prima facie case, Complainant must show:

(1) She was a member of a protected group;
(2) She applied for and was objectively qualified for the open job;
(3) She was rejected for the position; and
(4) Respondent continued to its hiring process.[15]

As stated above, based on her perceived disability Complainant is a member of a protected group. Complainant claims she had been informed by Litze that there was going to be a housekeeper position available, and she should speak to Winchester about the position. Complainant alleges she was qualified to perform the essential functions of the job. After Complainant inquired with Winchester about the position, she alleges Winchester made two comments to Complainant about her physical condition, specifically about Complainant's limping and limited ability to walk.

Based on the provided information, Complainant can establish a prima facie case.

The burden now shifts to Respondent to demonstrate a legitimate, non-discriminatory reason for failing to consider Complainant for a housekeeping position. Winchester claims there were no open housekeeping positions available as the Hotel already had two housekeepers. He also stated that no one was hired for an open housekeeping position around the time Complainant inquired about the position. Further, Winchester claims that he did not make any sort of comment indicating that Complainant could not work as a housekeeper because of a disability. Winchester claims he was not aware Complainant had a disability at the time she was inquiring about a housekeeping position.

Winchester made several comments during his interview that lends credence to Complainant's allegation. He referred to Complainant as a "little girl," stated he did not think she was "some handicapped broad," and claimed he did not see her "hobbling on up." It is believable that Winchester would make a discriminatory comment to Complainant, after she inquired about a housekeeping position, telling her that she could "barely walk." It is also clear from other comments he made that the management of the hotel appears to be lax at best, as neither he nor the owners were able to discuss or provide any information regarding Complainant's brief employment. This, combined with Respondent's failure to provide any requested documentation or information to reinforce its claims, shows it cannot establish a legitimate, non-discriminatory reason for failing to consider Complainant for a housekeeping position.

Based on the provided information, Complainant can establish she was not considered for a housekeeping position because of discrimination based on her disability.

---

[15] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

9

**Exhibit 1**

Conclusion:

Probable cause exists if there are reasonable grounds for believing [discrimination has occurred].[16] A determination of probable cause is made after an investigation and is based on "facts and circumstances that would be sufficient to induce a reasonable belief in the truth of the [claim]."[17] The test for probable cause is whether there are reasonable grounds to believe the assertion and does not require "absolute certainty" of the assertion.[18] In other words, a finding of probable cause means we have determined based on our investigation that there is sufficient evidence to support a reasonable belief that the Iowa Civil Rights Act has been violated.

Kaitlin Smith
Civil Rights Specialist
Iowa Civil Rights Commission

11/20/12
Date

---

[16] *Wilson v. Hayes*, 464 N.W.2d 250, 261-62 (Iowa 1990) (citing 52 Am.Jur.2d *Malicious Prosecution* §51, at 219).
[17] *In re Det. of Mead*, 790 N.W.2d 104, 111 (Iowa 2010), reh'g denied (Dec. 10, 2010). *See also Shaul v. Brown*, 28 Iowa 37, 47, 4 Am.Rep. 151. ("Without entering at length into the discussion, we may remark that the question of probable cause in every case involves first the ascertainment of the facts from the evidence, and then the application of the law to the facts ascertained.").
[18] *Children v. Burton*, 331 N.W.2d 673, 679 (Iowa 1983).

**Exhibit 1**